IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAMUEL B. RANDOLPH, IV,      :   CIVIL ACTION
                           :   NO. 11-3396
       Plaintiff,        :
                           :
   v.                   :
                           :
JOHN WETZEL, et al.,       :
                           :
       Defendants.       :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                 DECEMBER 18, 2013

### TABLE OF CONTENTS

I.   INTRODUCTION ................................................................ 3

II.  STANDARD OF REVIEW ......................................................... 5

  A.  All Claims Against Commonwealth Defendants in Their Official Capacity. ......................................................... 6

  B.  Claims Under the Eighth Amendment Against Commonwealth Defendants for Failure to Intervene as to Plaintiff's Medical Care. .................................................................. 8

  C.  Claims under the Eighth Amendment for Denial of Food and Water. ............................................................ 9

  D.  Claims Under the Eighth Amendment for Refusing to Transport on a Gurney. ............................................ 12

  E.  Claims under the Eighth Amendment for Denial of Visitation Privileges. ....................................................... 13

  F.  Claims under the Eighth Amendment for the Fluorescent Lighting. ......................................................... 14

  G.  Claims under the Americans with Disabilities Act. ................ 16

  H.  Claims under the Fourteenth Amendment for Denial of Due Process. ......................................................... 18

  I.  Claims under the Fourteenth Amendment for Denial of Access to the Courts. .................................................... 21

  J.  Eighth Amendment Claim Against Defendants Speelman,

Lacotta, and Rambler for Excessive Use of Force. ............................... 23

K.   Claims under First Amendment for Retaliation against
Defendants Speelman and Lacotta. .................................................... 27

L.   Claims under First Amendment for Retaliation against
Remaining Commonwealth Defendants. .............................................. 31

IV.   MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ......................... 32

A.   Claims under the Americans with Disabilities Act. ................. 32

B.   Claims under the Eighth Amendment for Failure to Provide
Treatment and for Fluorescent Lighting. ..................................... 34

   1. SCI-Greene Medical Defendants ................................................... 37

   2. SCI-Graterford Medical Defendants .............................................. 39

C.   Claims under the Eighth Amendment for Denial of Food and
Water. ....................................................................................................... 40

   1. SCI-Greene Medical Defendants ................................................... 40

   2. SCI-Graterford Medical Defendants .............................................. 42

D.   Claims under the Fourteenth Amendment for Denial of Due
Process. ................................................................................................... 43

E.   Claims for Medical Malpractice. ........................................................ 44

V.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ......................... 44

VI.   CONCLUSION ..................................................................................................... 45

# I.   INTRODUCTION

Samuel B. Randolph, IV ("Plaintiff") is an inmate in the Commonwealth of Pennsylvania's prison system.  He filed a pro se eighty-four page complaint (ECF No. 5).  In the Complaint, Plaintiff brings sundry claims for, inter alia retaliation for the filing of grievances, an alleged assault by correctional officers, an alleged denial of food and water, failure to transport Plaintiff on a gurney, denial of visitation privileges, claims under the Americans with Disabilities Act ("ADA"), Fourteenth Amendment violations, denial of access to the courts, denial of proper medical treatment, and medical malpractice.  Plaintiff names a plethora of defendants.  For organizational purposes the Court will divide the defendants into two groups: Commonwealth Defendants[1] and Medical

---

[1]      John Wetzel, Secretary of PA D.O.C.; Jeffery Beard; Mary Canino; Shirley Moore-Smeal; Louis Folino, Superintendent; Michael Wnerowicz, Superintendent; Deputy Mark Capozza, Deputy Superintendent; Larry Ludwig, Unit Manager; William Schamp; Major Francis Fields; Michael Guyton; Captain Paul Walker; Captain Dennis Brumfield; Captain Jerome Strickland; Lt. Derrick White; Lt. John Lozar; Lt. Robert Kennedy; Lt. Shaump; Lt. Paul Barkefelt; Lt. Craig Ashley; Deputy Jay Lane, Deputy Superintendent; Mr. Frank Regan, Unit Manager; Deputy Jeffery Martin; James Day; Capt. Stephen Campbell; Capt. Alfred Flaim; Lt. Shawn Roth; Lt. Robert Terra; Lt. Eric Verosky; Lt. Mark Price; Lt. Victor Santoyo; Nurse Nedra Grego; Lt. Eric Grego; Sgt. Jody Lohr; Sgt. Ronald Younkin; Sgt. Barry Chappell; Sgt. Stnakovich; Sgt. Brian Holsey; Ms. Mea Cunningham; Ms. Selena Wannamaker; C.O. Rucker; C.O. Kenneth Davidson; C.O. Matthew Lacotta; C.O. Mark Rambler; C.O. Mark Miller; Myron Stanishiefski; Sgt. Brian Kline; Sgt. Andrew Thomas; Sgt. Patrick Curran; Ms. Mayshun Coley; Ms. Sandra Payne-Carter; Ms.

Defendants.[2]  The Court will generally follow this grouping except where it is necessary to distinguish among the individual defendants.[3]

Commonwealth Defendants and Medical Defendants have filed separate Motions for Summary Judgment (ECF Nos. 78, 81). Plaintiff has filed a response to both motions (ECF No. 110) as well as a Motion for Partial Summary Judgment against Commonwealth Defendants and Dr. Byanchuk Jin (ECF No. 113). Defendants have filed their responses (ECF Nos. 121, 122).

---

Helen Pawlowski; Sharon Sebek; C.O. Joseph Pence; C.O. Daniel Speelman; C.O. Christopher Colgan, C.O. Kevin Salazar; Ms. Irma Vihldidal; Joseph Korszniak; Dorina Varner; Wendy Shaylor; Mr. Omar Nunez; and Arleen Humbert.

[2]     Byunghak Jin M.D.; Michael Herbik, M.D.; Margarita McDonald, M.D.; Bruce Blatt, M.D.; Richard Stefanic, M.D. (Misidentified as "Dr. Stephonic"); Michelle Howard Diggs, PA, Marlene Coachi, N.P. (misidentified as PA, Ms. Kochi); Dan Davis, PA; Dr. Felipe Arias; Nurse Arlene; Nurse Ronnie; Nurse Bruce Pokol; Nurse Kine; Nurse Joanne; Nurse Ed; Nurse Shardae; Nurse Tom; and John Kushner, Therapist.

[3]     The Court realizes that certain of Plaintiffs claims against Commonwealth Defendants will not be against all Commonwealth Defendants, or a claim against Medical Defendants may not be against all Medical Defendants. Plaintiff's complaint alone, however, runs over 80 pages and does not contain clearly enumerated counts or claims.  The Court does not want to risk omitting mention of a defendant against whom the Plaintiff intended to assert a claim even if such a claim was not clearly articulated.  Accordingly, when a distinction among particular defendants is not relevant to the granting of summary judgment on a particular claim, the Court will refer to the Commonwealth Defendants or Medical Defendants collectively.  The Court does this for the benefit of both Plaintiff and Defendants.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

In undertaking this analysis, the Court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citation omitted).

The standard for addressing cross-motions for summary judgment remains the same as if there were only one motion filed.   See <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008).[4]   When confronted with cross-motions for summary

---

[4]      "[C]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration

judgment the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

## III. COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Commonwealth Defendants include numerous public officials employed by the Commonwealth of Pennsylvania. Plaintiff brings claims against them in both their official and individual capacity.

### A.   All Claims Against Commonwealth Defendants in Their Official Capacity.

Plaintiff brings each of his claims against the Commonwealth Defendants in their official capacity.

"[S]uits against unconsenting [s]tates" are barred by Eleventh Amendment or sovereign immunity unless a state has waived its immunity. Sossamon v. Texas, 131 S. Ct. 1651, 1657-58 (2011) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S.

---

and determination whether genuine issues of material fact exist." Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

44, 54 (1996)); see also Seminole Tribe, 517 U.S. at 54–55, n.7. "Where a state agency or department is named as defendant, that too is considered a suit against a state which is barred by the eleventh amendment."  Geis v. Bd. of Educ. of Parsippany-Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir. 1985) (citing Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association, 450 U.S. 147 (1981)); see also Everett v. Schramm, 772 F.2d 1114, 1118 (3d Cir. 1985) ("[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." (citation omitted)).[5]

Suits against Commonwealth Defendants in their official capacity are suits against the state of Pennsylvania. Therefore, Plaintiff's claims against any defendants in their official capacities for monetary damages are barred by sovereign immunity.  Accordingly, Commonwealth Defendants, in their official capacities, are entitled to judgment as a matter of law as to Plaintiff's claims for monetary relief.

Hereafter, the Court will examine Plaintiff's claims

---

[5]    "[W]here a suit seeks relief against a state agency for action contrary 'to the supreme authority of the United States', it is not deemed a suit against the sovereign" and is thus not subject to sovereign immunity. Geis, 774 F.2d at 580 (quoting Ex parte Young, 209 U.S. 123, 167 (1908)).  That exception, known as the "stripping doctrine," is "limited to suits for prospective injunctive relief, and the federal courts may not award retroactive monetary relief in such cases." Id. (citing Edelman v. Jordan, 415 U.S. 651 (1974)).

against Defendants in their individual capacities because

"[a]lthough, absent waiver, the Eleventh Amendment bars damage

suits against a state or against state officials in their

official capacities when damages will have to be paid with state

funds, . . . it does not bar a damage suit against state

officials in their individual capacities." West v. Keve, 571

F.2d 158, 163 (3d Cir. 1978) (internal citations omitted).

**B.    Claims Under the Eighth Amendment Against
Commonwealth Defendants for Failure to Intervene as to
Plaintiff's Medical Care.**

Plaintiff claims that Commonwealth Defendants are

liable for the allegedly inadequate medical care provided or

recommended by Medical Defendants.

In a §1983 action, a plaintiff must show personal

involvement of defendants by alleging personal direction, actual

knowledge, or acquiescence.  Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988).  "[A]s a general matter the [Third

Circuit] has been reluctant to assign liability to prison

officials based solely on the denial of prisoner grievances."

Carter v. Smith, CIV.A 08-279, 2009 WL 3088428, at *5 (E.D. Pa.

Sept. 22, 2009).  Even if a prison official's review were to

constitute personal involvement, "absent a reason to believe (or

actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison

official will not be chargeable with the Eighth Amendment

scienter requirement of deliberate indifference." Spruill v.

Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  This is because "[i]f

a prisoner is under the care of medical experts . . . a non-

medical prison official will generally be justified in believing

that the prisoner is in capable hands."  Id.

        Here, Plaintiff's claims against Medical Defendants do

not meet the deliberate indifference standard required.  See

infra Section IV(B), (C).  Accordingly, whether Plaintiff's

claim is based on a theory of inadequate supervision of Medical

Defendants or actual knowledge by Commonwealth Defendants, the

result is the same.  Ergo, Commonwealth Defendants cannot be

liable as there was no underlying constitutional violation

committed by Medical Defendants.

        **C.  Claims under the Eighth Amendment for Denial of
        Food and Water.**

        Plaintiff claims that the Commonwealth Defendants

failed to provide him with food and water by placing his meal

trays outside of his reach.  See Compl. ¶¶ 87-90, 112, 140, 155-

57, 233, and 317.

        "The [Eighth] Amendment . . . imposes duties" on

prisons to "ensure that inmates receive adequate food."  Farmer

v. Brennan, 511 U.S. 825, 832 (1994).  The failure to provide

accommodations to Plaintiff, such as food and water, are governed under the "deliberate indifference to serious medical needs" standard.  Spruill, 372 F.3d at 235-36; see also infra Section IV(C).  The "standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious."  Spruill, 372 F.3d at 235-36.

Plaintiff admits that: prison officials regularly brought food and water to Plaintiff's cell, see Compl. ¶¶ 139-40, 146, 317; Plaintiff was repeatedly examined, see id. ¶¶ 103, 111, 114, 117, 122-24, 263-65, 268, and Dr. Jin told Plaintiff that he could and should walk to retrieve his food, id. at ¶ 108; Plaintiff refused to stand and retrieve his food, see id. ¶¶ 139-40.  Plaintiff's own medical evidence states that "[t]here is nothing on the face of these records that provides a medical explanation for [Plaintiff's] inability to walk."  Pl.'s Resp. Defs.' Mots. Summ. J., Ex. S, Preliminary MRI Report and Letter from Doctor Elias Melhem, MD, PhD 5-6, August 7, 2009, ECF No. 111-4 (stating, however, that additional testing would be useful).

In fact, Plaintiff fails to provide evidence by which a reasonable jury could find that Plaintiff suffered from a medical condition that made him unable to retrieve his food and water as it was provided to him by Commonwealth Defendants.

The Commonwealth Defendants relied upon the medical experts' diagnosis that Plaintiff was malingering and was physically able to retrieve his food as provided.  Medical Defs.' Mot. Summ. J., Ex. B, Lumbar Spine CT Final Report, Aug. 5, 2013, ECF No. 81-4.  Commonwealth Defendants at SCI-Greene attempted food delivery by placing food at his cell but they could not go beyond regulations and bring it into his cell, and SCI-Graterford defendants accommodated Plaintiff by placing a rolling cart in his cell.  See Commw. Defs.' Resp. Pl.'s Mot. Partial Summ. J., Ex. C, Pl. Dep. 273:6-13, January 9, 2012, ECF No. 78-3; see also Compl. ¶¶ 87-90.

Plaintiff cannot show that the actions of Commonwealth Defendants satisfy the "deliberate indifference" standard necessary for Plaintiff to sustain a claim because Commonwealth Defendants relied upon the medical opinions of Plaintiff's doctors in choosing the method of delivering food and water. See Spruill, 372 F.3d at 235-36.  Furthermore, Plaintiff's refusal to retrieve the food and water as provided cannot create liability for Commonwealth Defendants where there is no evidence to show Plaintiff could not access the food and water.  See Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005); Talib, 138 F.3d at 216.

D.    **Claims Under the Eighth Amendment for Refusing to Transport on a Gurney.**

Plaintiff alleges that the Commonwealth Defendants at SCI-Graterford violated his Eighth Amendment rights by refusing to transport him on a gurney.  Specifically, Plaintiff claims that the Commonwealth Defendants refused to transport him outdoors for "yard time" and thus denied him exercise time.  See Compl. ¶¶  55, 120, 135, 173, 208, 225, 362, 400, 409-410, 421.

Commonwealth Defendants from SCI-Graterford contend that they relied on Medical Defendants' judgment in Commonwealth Defendant's decision,[6] see Medical Defs.' Mot. Summ. J., Ex. C, Disability Request Form and Denials, ECF No. 81-11, that Plaintiff did not need a gurney to be transported and followed the prison's rules in refusing to transport him on a gurney, see Commw. Defs.' Mot. Summ. J., Ex. Q, Declaration Maj. Thomas Dohman 1-3, ECF No. 78-16.  Plaintiff refused to sit up and get into a wheelchair (as his doctors said he was able to).  See Disability Request Form and Denials.

The Court agrees with the Commonwealth Defendants' assessment that their requirement that Plaintiff use a wheelchair rather than a gurney (as one was not medically necessitated) "does not create inhumane prison conditions, deprive plaintiff of basic necessities or fail to protect his

---

[6]      In particular, the judgment of Dr. Blatt.

health or safety; nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur."  Commw. Defs.' Mot. Summ. J. 34 (citing Sandin v. Conner, 515 U.S. 472, 485 (1995); Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle v. Gamble, 429 U.S. 97 (1976)).

Accordingly, Plaintiff was not denied his Eighth Amendment rights because the Commonwealth Defendants provided the accommodations recommended by the doctors.  See, e.g., Rodriguez, 403 F.3d at 953 (stating that prison's policy that forbid inmate to leave his cell if he refused to follow the rule requiring him to stow certain items while outside his cell did not constitute cruel and unusual punishment even when inmate missed meals due to failure to follow rule).

**E.  Claims under the Eighth Amendment for Denial of Visitation Privileges.**

Plaintiff alleges that Commonwealth Defendants denied his visitation privileges when they would not transport Plaintiff, on a gurney, to meet with his visitors.  Compl. ¶¶ 144, 147, 202.  As a result, Plaintiff's visitation privileges were limited on certain occasions because he claims he could not go to see his visitors unless he was taken there on a gurney.

Commonwealth Defendants, however, claim that he was able to go without using the gurney, and, thus, Plaintiff was effectively refusing to go to visitation.  Commw. Defs.' Mot.

Summ. J. 11.  Commonwealth Defendants claim that on "numerous occasions," they offered Plaintiff the use of a wheelchair for transportation in and around the prison and he declined.  Id. (citing Compl. ¶¶ 120, 238; Pl. Dep. 483:1-486:25, 613:1-615:1, 992:1-24, 1168:1-24, 1317:1-24).

The Supreme Court has previously held that restrictions on visitation are not so dramatic a departure from acceptable standards for confinement that they are unconstitutional.  Overton v. Bazzetta, 539 U.S. 126, 136-37 (2003) (holding that where prisoner was denied visitation for at least two years due to substance abuse violations that the "restriction undoubtedly makes the prisoner's confinement more difficult to bear" but "d[id] not, in the circumstances of th[at] case, fall below the standards mandated by the Eighth Amendment.") (citing Sandin, 516 U.S. at 485).

Accordingly, the Court finds that Commonwealth Defendants are entitled to summary judgment.

### F.   Claims under the Eighth Amendment for the Fluorescent Lighting.

Plaintiff claims that the lights at SCI-Greene and SCI-Graterford were excessively bright.  Compl. ¶¶ 173, 208, 225, 249, 252-55.  Plaintiff also complains that these lights were left on for twenty-four hours per day.  Id.  Thus,

Plaintiff alleges that he suffered from blurred vision and other physical difficulties, such as trouble sleeping.  Id. at ¶¶ 249, 252-55.

Conditions such as prison lighting will be acceptable where they are reasonably related to a legitimate penological interest.  See, e.g., Stewart v. Beard, 417 F. App'x 117, 119-20 (3d Cir. 2011) (non-precedential) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Woodruff v. Paulson, 51 F. App'x 822, 824 (10th Cir. 2002) (non-precedential) (finding that claim that lighting was injurious was frivolous).  Notably, the Stewart court held that twenty-four hour illumination of a restricted housing unit did not violate the Eighth Amendment where reasonably related to legitimate interests of the prison. See Stewart, 417 F. App'x at 119-20.  In Woodruff, the Tenth Circuit held, as frivolous, a prisoner's claim that the prison lighting was painful was found to be frivolous.  Woodruff, 51 F. App'x at 824.

Thus, the Court finds that the lighting at the two facilities in the present case was related to a legitimate penological concern.[7]  Furthermore, Plaintiff has not provided

_____

[7]     Commonwealth Defendants suggest they have the same penological interests as the defendants in Stewart.  Commw. Defs.' Mot. Summ. J. 35.  In Stewart, the defendants demonstrated that the "lighting provides security for staff and inmates in that it helps staff guard against the inmates' aggressive conduct and allows the staff to easily check on the

evidence by which a reasonable jury could find that he suffered any genuine harm as a result of the lighting.  Accordingly, the Commonwealth Defendants are entitled to summary judgment on this issue.

### G.    Claims under the Americans with Disabilities Act.

Plaintiff claims that certain acts alleged to have been committed by Commonwealth Defendants are a violation of the ADA. Compl. ¶ 421.[8]  These alleged act include: denial of food and water; denial of outside exercise; transportation by gurney; and malicious intent.

"[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates." Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998).  The Third Circuit "has yet to address individual liability under Title II of the ADA." Brown v. Deparlos, 492 F. App'x 211, n.2 (3d Cir. 2012) (non-

---

health and safety of the inmates." Stewart, 417 F. App'x at 119.

[8]      Plaintiff does not specify which part of the ADA he proceeds under.  For Plaintiff's benefit, the Court construes his claims as alleged under Title II.

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

precedential).  Other Circuits have held "that individuals are
not liable under Titles I and II of the ADA."  Emerson v. Thiel
Coll., 296 F.3d 184, 189 (3d Cir. 2002); see also Alsbrook v.
City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999).[9]
Additionally, many district courts have held that, due to the
statute's use of the term "public entity," Title II was never
intended to be used against government officials in their
individual capacities.  See Douris v. Schweiker, 229 F. Supp. 2d
391, 397 (E.D. Pa. 2002) ("[The] consensus view among district
courts in this circuit is that individual liability cannot be
imposed under the ADA."), aff'd sub nom Douris v. Rendell, 100
F. App'x 126 (3d Cir. 2004).

        Accordingly, summary judgment for Commonwealth
Defendants is appropriate.

---

[9]

        [W]e agree with the panel opinion's conclusion that
        the commissioners may not be sued in their individual
        capacities directly under the provisions of Title II.
        Title II provides disabled individuals redress for
        discrimination by a 'public entity.'  See 42 U.S.C. §
        12132 (2006).  That term, as it is defined within the
        statute, does not include individuals.

Douris, 229 F. Supp. at 397 (citing Transamerica Mortgage
Advisors, Inc. v. Lewis, 444 U.S. 11, 19, (1979)).

**H.   Claims under the Fourteenth Amendment for Denial of Due Process.**

Plaintiff alleges that his absence at his misconduct hearings and his subsequent sentence to 540 days of disciplinary custody violated his due process rights.  Compl. ¶¶ 42-47, 129-30.  On May 20, 2009, Plaintiff's misconduct hearing was held in absentia.  Plaintiff claims he wanted to attend but was unable due to his injuries, but Commonwealth Defendants claim that Plaintiff was able but refused.[10]  Plaintiff further alleges that additional hearings were also held in absentia. Compl. ¶ 43.

In the present context, the minimum requirements of procedural due process to be satisfied are "advance written notice of the claimed violation and a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." Wolff v. McDonnell, 418 U.S. 539, 563 (1974).  Additionally, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  Prisoners do not, however, have an "unrestricted right to call witnesses from the prison population." Grandison v. Cuyler, 774 F.2d 598, 602 (3d Cir.

---

[10]       For the reasons that follow, the distinction is not necessary to deciding the present motions before the Court.

1985) (citing <u>Wolff</u>, 418 U.S. at 564).  The Supreme Court struck a balance, weighing "the inmate's interest . . . against the needs of the prison."  <u>Id.</u>

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

<u>Id.</u>

Here Plaintiff received both "advanced written notice of the claimed violation," Pl.'s Mot. Partial Summ. J., Ex. A, Statement Harvey Miguel Robinson 1-2, Dec. 20, 2010, ECF No. 111, and "a written statement of the fact finders as to the evidence relied upon" in reaching their decision, <u>id.</u> 6. Plaintiff did not attend the hearing or call witnesses.  <u>See</u> Commw. Defs.' Resp. Pl.'s Mot. Partial Summ. J., Ex. 1, Misconduct Rep. 6-7, Aug. 13, 2009, ECF Nos. 121-2.  Whether or not injuries legitimately kept the Plaintiff from attending,[11] the decision of the correctional facility to hold the hearing without Plaintiff is "within the necessary discretion" of the

---

[11]    Commonwealth Defendants claim that the absence of any witnesses and the in absentia nature of the hearing, however, are due to Plaintiff's "refusal" to attend.  For the purposes of deciding the present motion, the Court does not need to determine that issue.

prison officials to "keep the hearing within reasonable time limits." Wolff, 418 U.S. at 566.

Furthermore, Plaintiff complains that he was denied due process as a result of the change in his confinement conditions when he was placed in a restricted housing unit.  The test for a change in confinement conditions is whether the transfer creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  In Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997), the Third Circuit considered whether "conditions experienced . . . in administrative custody" necessarily "impose . . . atypical and significant hardship." Id. (quoting Sandin, 515 U.S. at 484).  In deciding that administrative custody was not an "atypical and significant hardship" the Griffin court found that "an atypical period of time to undesirable conditions in violation of state law" would be a factor in determining "whether due process protection has been triggered." Griffin, 112 F.3d at 708-09 (holding that a period of as long as fifteen months would still fall within the expected parameters).  The Griffin court found that administrative custody was not an undesirable condition nor was the amount of time atypical. Id.  Plaintiff does not claim that the administrative custody alone was "atypical or significant" in duration or substance.  The only portion of administrative

custody that Plaintiff claims as atypical and significant, aside from his medical treatment, is the lighting in his cell.  Compl. ¶ 55.

Plaintiff was afforded the procedure due and was not subjected to atypical and significant hardship.  Accordingly, Commonwealth Defendants are entitled to summary judgment on Plaintiff's due process claims.

### I.   Claims under the Fourteenth Amendment for Denial of Access to the Courts.

Plaintiff asserts that when he was moved between cells, his access to his personal effects and legal paperwork was restricted and the he was not given his legal mail.  Compl. ¶¶ 141, 160, 204.  Plaintiff also claims he was, at times, denied access to the law library at SCI-Graterford.  Id. at ¶¶ 411-13.  Plaintiff argues, therefore, that these actions constituted a denial of his access to the courts.  Id. at ¶¶ 141, 160, 201, 411-13.

In Bounds v. Smith, 430 U.S 817 (1977) the Supreme Court recognized a prisoner's limited right of access to the courts.  Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis v. Casey, 518 U.S.

343, 355 (1996).

> When any inmate, even an illiterate or non-English-speaking inmate, shows that an actionable claim[,] [related to a prisoner's right of access to the court,] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish "adequate law libraries or adequate assistance from persons trained in the law."

Id. at 356 (quoting Bounds, 430 U.S. at 828.)  "[T]o pursue a claim of denial of access to the courts an inmate must allege actual injury, such as the loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997) (citing Lewis, 518 U.S. at 343).

Presently, Plaintiff proceeds with all of his legal claims in addition to a complaint of denial of access to the courts.  Accordingly, there has been no "actual injury" to Plaintiff as he has not suffered the loss or rejection of a legal claim.  Therefore, Commonwealth Defendants are entitled to summary judgment as to this claim.

**J.   Eighth Amendment Claim Against Defendants Speelman, Lacotta, and Rambler for Excessive Use of Force.**

Plaintiff alleges that on May 18, 2009, Defendants Lacotta and Speelman assaulted him while he was "handcuffed behind his back."  Compl. ¶ 7.  Plaintiff alleges that Defendants Lacotta and Speelman proceeded by "grabbing [P]laintiff's handcuffs . . . and lifting upward, while simultaneously grabbing the back of [P]laintiff's neck and head . . . and forcing [Plaintiff's] head toward the floor."  Id. ¶ 8.  Plaintiff claims that the assault continued with Defendant Speelman "ram[ming] Plaintiff's head, neck and shoulder into the wall 3 - 4 times extremely hard," "manhandling," "punching [P]laintiff repeatedly . . . with closed fists," and "kick[ing] [P]laintiff several times as he lay on the ground."  Id. ¶¶ 9-10.  Plaintiff also claims that Defendant Rambler "violently yanked [P]laintiff's head back very hard and put a hood over [P]laintiff's entire face and head."  Id. ¶ 15.  As a result of the alleged beating, Plaintiff asserts that he sustained injuries making him unable to sit,[12] stand or walk.

The "Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive or unjustified."

---

[12]     Plaintiff claims that, because he was unable to sit, he was also unable to use the toilet or a wheelchair.

Brooks v. Kyler, 204 F.3d. 102, 106-07 (3d Cir. 2000) (quoting
Whitley v. Albers, 475 U.S. 312, 327 (1986)).  "[T]he central
question is whether force was applied in a good-faith effort to
maintain or restore discipline, or maliciously and sadistically
to cause harm."  Id. at 106-07 (quoting Hudson v. McMillian, 503
U.S. 1, 7 (1992)).  In making this determination, "courts look
to several factors including: (1) 'the need for the application
of force'; (2) 'the relationship between the need and the amount
of force that was used'; (3) 'the extent of injury inflicted';
(4) 'the extent of the threat to the safety of staff and
inmates, as reasonably perceived by responsible officials on the
basis of the facts known to them'; and (5) 'any efforts made to
temper the severity of a forceful response.'"  Id. (quoting
Whitley, 475 U.S. at 321)

        Even under the facts as alleged by Plaintiff, there
may have been a need for some force to return Plaintiff to his
cell, as Plaintiff concedes that he verbally contested his
return to his cell.  Compl. ¶ 6.  Under the second Whitley
factor, however, the relationship between the need and the
amount of force alleged is disproportionate given the amount of
force that Defendants are alleged to have applied.  Id. ¶¶ 9-11.
Under the fourth prong the threat to other inmates was minimal
because only Plaintiff and Defendants Speelman and Locotta were
present.  Id. ¶¶ 5-6.  Furthermore, the threat to staff was

minimal because the Plaintiff was unarmed, alone, and handcuffed behind his back.  Id. ¶ 4.  Under the fifth prong, Plaintiff alleges that Defendants were not attempting to "temper severity" but instead escalated as the incident continued.  Id. at 9-11. The third Whitley prong, extent of the injury inflicted, is but one factor in the analysis of the use of force.  Plaintiff has submitted sufficient evidence that a reasonable jury could find that some injury, although de minimis, has occurred. Furthermore, the Third Circuit has held that even if the injury is de minimis, the Eighth Amendment violation lies in the force applied.  See Brooks, 204 F.3d at 108.

In Brooks, a "Pennsylvania state prisoner, brought . . . suit under [§] 1983" claiming, inter alia, a violation of the "Eighth Amendment [protection] to be free from cruel and unusual punishment" stemming from allegations that he was "violently beaten by three prison guards."  Brooks, 204 F.3d at 103.  The Brooks court reversed a grant of summary judgment for defendant prison guards where the inmate "failed to present any medical evidence which would demonstrate that he sustained anything more than de minimis injuries."  Id. at 106-07.  "[A]n essential aspect of our holding is that a plaintiff's claim does not turn on . . . definitions" of "de minimis, minor, and significant injury."  Id. at 109.

When prison officials maliciously and sadistically use

25

> force to cause harm, contemporary standards of decency
> always are violated. This is true whether or not
> significant injury is evident. Otherwise, the Eighth
> Amendment would permit any physical punishment, no
> matter how diabolic or inhuman, inflicting less than
> some arbitrary quantity of injury.

Id. at 108 (quoting Hudson, 503 U.S. at 9).  For instance,

"[p]unching and kicking someone who is handcuffed behind his

back . . . as he is being thrown into cabinets and walls is

repugnant to the conscience of mankind" and "any ruling to the

contrary cannot stand."  Smith v. Mensinger, 293 F.3d 641, 649-

50 (3d. Cir. 2002).

       In Smith, the Third Circuit explained that "the Eighth

Amendment does not protect an inmate against a de minimis use of

force" but summary judgment is not appropriate where "accepting

allegations as true . . . a jury could find that the defendants

acted not merely in good faith to maintain or restore

discipline, but rather out of malice for the very purpose of

causing harm."  Id. at 648.  The Third Circuit specifically held

that "de minimis injuries do not necessarily establish de

minimis force."  Id. at 649.  A jury could "conclude that [a

plaintiff's] injuries were so minor the defendants' account of

the incident is more credible . . . and/or that the force used

was not of unconstitutional dimension."  Id.  This issue,

however, "is not an issue of law a court can decide."  Id.

Hence there remains a genuine dispute of material fact as to the use of force by the correction officers in the May 18, 2009 incident.  Plaintiff's allegations as to May 18, 2009, are analogous to those facts presented in Smith.  For instance, he claims that Defendants Lacotta and Speelman assaulted him while he was "handcuffed behind his back," Compl. ¶ 7, and Defendants Lacotta and Speelman allegedly rammed "Plaintiff's head, neck and shoulder into the wall 3 - 4 times extremely hard," while "manhandling," "punching [P]laintiff repeatedly . . . with closed fists," and "kick[ing] [P]laintiff several times as he lay on the ground."  Id. ¶¶ 9-10.

Accordingly, under the Third Circuit's holding in Smith, there is a genuine dispute of a material fact as to the force used by the officers and neither party is entitled to judgment as a matter of law.

### K.   Claims under First Amendment for Retaliation against Defendants Speelman and Lacotta.

Plaintiff claims that Defendants Speelman and Lacotta assaulted him as retaliation for Plaintiff's previous filing of grievances against other prison staff.  Compl. ¶¶ 6, 12, 33-34. Plaintiff claims that the filing of grievances constitutes protected speech and the assault[13] was meant to deter him.

---

[13]      For a full description of the assault, see supra Section III(J)

"[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citing Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir.2000)).  The filing of prison grievances is protected speech under the United States Constitution.  See Todaro v. Bowman, 872 F.2d 43, 49 (3d Cir. 1989) (holding that prisoner's complaints about prison conditions were protected speech).

In Rauser the Third Circuit "set forth with specificity the elements of a prisoner's cause of action for retaliation and the burden of proof he must carry to succeed." Rauser, 241 F.3d at 333.  Rauser stated that a prisoner-plaintiff in a retaliation case must 1) "prove that the conduct which led to the alleged retaliation was constitutionally protected," id. at 333 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999)), 2) "show that he suffered some 'adverse action' at the hands of the prison officials," id. (citing Allah, 229 F.3d at 225), "by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights," id. (citing Allah, 229 F.3d at 225), and 3) prove "a causal link between the exercise of his constitutional rights and the adverse action

28

taken against him" id.

The Third Circuit has adopted a burden shifting framework.  Id. (applying public employment retaliation framework from Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).  Under this framework, Plaintiff bears the initial burden of "proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Id. (quoting Mount Healthy, 429 U.S. at 287).  If Plaintiff satisfies his burden, the burden then shifts "to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity."  Id. at 333.

Timing itself may be "sufficient to establish" that retaliation was a substantial or motivating factor (i.e. a causal link) but "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive."  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)).  "[T]iming plus other evidence may be an appropriate test where the temporal proximity is not so close as to be unduly suggestive."  Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir.2000)).

Here, there remains a material issue of fact regarding Plaintiff's freedom of speech claim against Defendants Speelman

and Lacotta.  Plaintiff alleges that Defendants Speelman and
Lacotta assaulted him as retaliation for Plaintiff's previous
filing of grievances.  Compl. ¶ 6, 12.  Plaintiff's grievances
were protected speech, see Todaro v. Bowman, 872 F.2d 43, 49,
and the alleged assault is certainly an adverse action.
Contrary to Defendants' position that Plaintiff had not filed
grievances prior to the assault, Commw. Defs.' Mot. Summ. J. 44,
Plaintiff identifies a number of filed grievances that predate
the assault, see Pl.'s Resp. Defs.' Mots. Summ. J., Ex. Y, Pl.'s
Pre-Assault Grievances 2-9, 10-12, ECF Nos. 111-8, 111-9.
Plaintiff also submitted statements from other inmates that
suggest that the officers knew of the grievances prior to the
alleged assault.  See Robinson Statement; Pl.'s Mot. Partial
Summ. J., Ex. B, Statement Daniel J. Dougherty, Apr. 11, 2012,
ECF No. 111; id., Ex. C, Statement Arthur J. Bomar, Jan., 10,
2012.

Accordingly, there is a genuine issue of material fact
and the movants have not demonstrated that they are entitled to
summary judgment.  See Rauser, 241 F.3d at 333.

30

**L.    Claims under First Amendment for Retaliation against Remaining Commonwealth Defendants.**

As to the other Commonwealth Defendants, Plaintiff alleges they retaliated in various ways including holding an in absentia hearing and denying his grievance appeals.

Even if Plaintiff were to meet the initial <u>Rauser</u> burden, Commonwealth Defendants have shown that they "would have taken the same disciplinary action even in the absence of the protected activity." <u>Rauser</u>, 241 F.3d at 333.  Commonwealth Defendants have submitted uncontradicted evidence that the hearings would have been held in absentia and the same results reached even in the absence of the previous grievances filed by Plaintiff.  <u>See</u> Misconduct Hearing Materials 5, 8, 10.  For a further explanation, <u>see</u> <u>supra</u> Section III(J).

Therefore, Commonwealth Defendants are entitled to summary judgment.  <u>See</u> <u>Rauser</u>, 241 F.3d at 333.

**IV.  MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Court will grant in part and deny in part Medical Defendants'[14] Motion for Summary Judgment as set forth below.

**A.  Claims under the Americans with Disabilities Act.**

Plaintiff avers that Medical Defendants denied him the accommodations that he claims he is entitled to as a person who has a disability covered by the ADA.

Plaintiff applied for an official disability accommodation at SCI-Graterford on May 23, 2011.  See Disability Request Form and Denials.  Plaintiff requested a gurney to go to the law library, the yard, the showers, to get haircuts, for dental and medical appointments, and to speak with psychiatrists.  See id.

Medical Defendants claim that Plaintiff's request was denied because there was no medical evidence to corroborate his alleged disability.  See Medical Defs.' Mot. Summ. J. 10 (citing Disability Request Form and Denials).[15]  Plaintiff claims that

---

[14]     Byunghak Jin M.D., Michael Herbik, M.D., Margarita McDonald, M.D., Bruce Blatt, M.D., Richard Stefanic, M.D. (Misidentified as "Dr. Stephonic"), Michelle Howard Diggs, PA, Marlene Coachi, N.P. (misidentified as PA, Ms. Kochi), Dr. Felipe Arias, Nurse Ronnie, Nurse Bruce, Nurse Kine, and Nurse Joanne.

[15]     Medical Defendants also relied on video recordings

Medical Defendants' denial of a gurney restricted his access to his stored property, the law library, showers, and yard.  Compl. ¶¶ 55, 421, 422.  Furthermore, Plaintiff alleges that Medical Defendants denied him accommodations necessary for him to bathe, eat, and drink.  Id.

Plaintiff's claim falls under Title II of the ADA. Title II of the ADA refers to a "public entity" and, for that reason, does not apply to individuals.  See Douris, 229 F. Supp. 2d at 397; see also Alsbrook, 184 F.3d at 1005 n.8 ("Title II provides disabled individuals redress for discrimination by a 'public entity.'  That term, as it is defined within the statute, does not include individuals." (internal citation

---

made of Plaintiff.
    The first video was taken by a camera set up at SCI-Greene, which recorded Plaintiff from June 5, 2009 through June 7, 2009.  See Commw. Defs.' Mot. Summ. J., Ex. L, First Recording of Pl., June 7-9, 2009.  Commonwealth Defendants installed the camera, which ran for 24 hours a day, to verify Plaintiff's claim that he could not move his lower extremities. Medical Defs.' Mot. Summ. J. 9-10.  Actions recorded by the camera include Plaintiff using the toilet, crouching on both legs and returning to his bed after using the toilet.  See First Recording of Pl.
    From June 29, 2010 through July 1, 2010, another video camera was set to record Plaintiff, this time the camera was placed in an air vent in the ceiling of Plaintiff's cell in the infirmary at SCI-Greene.  Medical Defs.' Mot. Summ. J. 10-11; see also Commw. Defs.' Mot. Summ. J., Ex. M, Second Cell Recording of Pl., June 29-July 1, 2010. .  Like the previous camera, it ran for 24 hours.  Medical Defs.' Mot. Summ. J. 10. The video clips provided to the Court show Plaintiff sitting up in his bed as well as moving around in his bed.  See Second Cell Recording.

omitted)).  For a further discussion of Title II, see <u>supra</u>
Section III(G).

Plaintiff does not name an institution as a defendant
in this matter.  <u>See</u> Compl.  Plaintiff directs his ADA claims
towards the "actions of all defendants named and described of in
this complaint."  <u>Id.</u> ¶ 421.  Accordingly, Medical Defendants
are entitled to summary judgment for the same reasons as given
in Section III(G), <u>supra</u>.

> **B.   Claims under the Eighth Amendment for Failure to
> Provide Treatment and for Fluorescent Lighting.**

Plaintiff avers that SCI-Greene and SCI-Graterford
Medical Defendants refused to provide him with necessary medical
care.[16]  <u>See</u> Compl. ¶¶ 1-2.

A refusal to provide medical care to a prisoner
violates the Eighth Amendment's prohibition of "cruel and
unusual punishment."  U.S. Const. amend. VIII.  "Regardless of
how evidenced," whether "manifested by prison doctors in their
response to the prisoner's need or by prison guards in
intentionally denying or delaying access to medical care or
intentionally interfering with the treatment once prescribed,"
"deliberate indifference to a prisoner's serious illness or
injury states a cause of action under § 1983."  <u>Estelle</u>, 429

---

[16]      The alleged facts are set out in detail below, <u>infra</u>
Section IV(B)(1), (2).

U.S. at 104-05.  "The Estelle standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious."  Spruill, 372 F.3d at 235-36.  The Estelle standard is met when 1) a doctor is "intentionally inflicting pain on [a] prisoner," 2) "prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," or 3) "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care."  Id. at 235.

A claim against prison officials and/or prison medical professionals for failure to provide medical care "is fact-intensive and . . . require[s] . . . development of the record" and a "conclusory assessment essentially disregards [a] [plaintiff's] allegations."  Leamer v. Fauver, 288 F.3d 532, 547 (3d Cir. 2002).  If there is a "paucity of the record" and an insufficient "understanding of the treatment required and prescribed," summary judgment is inappropriate at that stage because deliberate indifference is not beyond doubt.  Id. at 547-48.

"[I]nadvertent failure to provide adequate medical care," or "that a physician has been negligent in diagnosing or treating a medical condition" does not constitute deliberate indifference.  Estelle, 429 U.S. at 106.  These failures are

35

"[a]t most medical malpractice" and while they may be cognizable under state tort law, they are not Eighth Amendment violations. Id. at 107.

In Brown v. Borough of Chambersburg, 903 F.2d 274 (3d Cir. 1990), a former prisoner brought suit against a doctor who conducted only a visual examination of his upper chest and did not press on his ribs, concluding that plaintiff had only a bruise, thereby failing to discover the full extent of his injuries. Id. at 278. Upon release from custody, the plaintiff obtained medical treatment at a local hospital where doctors discovered two broken ribs. Id. The Chambersburg court held that "[t]he most that can be said of plaintiff's claim is that it asserts the doctor's exercise of deficient professional judgment" and thus, there was not deliberate indifference. Id.

But in Spruill, the court held that the complaint in that case "sufficiently attribute[d] a mental state of deliberate indifference (or worse)" to the defendant doctor. Id. at 237. The court found that the plaintiff in Spruill had properly plead and created a material issue of fact by asserting that 1) due to "lack of proper medical care, the plaintiff was subjected to the possible risks of a permanent disability or a fatal or serious injury," 2) defendant medical staff "acted maliciously and sadistically, and that those actions were intended to inflict pain on the plaintiff without any medical

justification," and 3) defendant medical staff "refused to examine him on multiple occasions and . . . accused him of playing games."  Id. at 237.  In contrast, the Chambersburg plaintiff received treatment, without delay, and complained of deficient professional judgment.  903 F.2d at 274.


### 1. SCI-Greene Medical Defendants


Plaintiff claims that, between the dates of May 19, 2009 and June 15, 2009, he was denied "pain medication," "medical treatment," treatment at "an outside hospital for evaluation," an "MRI/CT scan," and treatment by "a specialist." Compl. ¶ 55.  Plaintiff alleges a "continual and multiple denial of food and water, causing severe dehydration and starvation." Compl. ¶ 55.  Finally, Plaintiff avers he was purposefully "subjected to . . . intensely bright fluorescent lighting conditions."  Compl. ¶ 55.

Plaintiff asserts that he was initially seen on the day of the alleged assault by Physician's Assistant Diggs, Nurse Barnes, and Nurse Ed (deceased), and that Plaintiff received an assessment and gurney transport to the infirmary.  Compl. ¶ 17. Plaintiff contends that his condition was exacerbated by the fact that Medical Defendants "left [P]laintiff . . . handcuffed

behind his back and shackled for 3 hours."  Compl. ¶ 19.
Plaintiff next asserts he was seen and examined by Dr. Jin of
and states that Plaintiff explained his injuries, requested pain
medication, and requested x-rays.  Compl. ¶¶ 20-22.  Plaintiff
claims that Dr. Jin denied all of Plaintiff's requests except as
they related to his right shoulder.  Compl. ¶ 23.  Plaintiff
claims that he requested "pain medication, medical treatment,
and to be sent to the emergency room . . . and [an] MRI" from
multiple Medical Defendants.  Compl. ¶ 25.

Dr. Jin ordered the medication "Fioricet" in response
to Randolph's request.  Compl. ¶ 25.  Furthermore, on May 20,
2009, Dr. Jin and Nurse Ronnie came to Plaintiff's cell door
after which "Dr. Jin, listened to everything that [P]laintiff
explained, . . . examined [P]laintiff's neck and back, and told
[P]laintiff he was ordering another x-ray."  Compl. ¶ 60.

The claims against Medical Defendants at SCI-Greene
cannot be described as "deliberately indifferent" to a "serious
medical need/injury."  Estelle, 429 U.S. at 104-05.  The doctor
and staff examined Plaintiff and exercised their medical
judgment as to the appropriate care.  The weight of the evidence
from medical testing is that Plaintiff has no medical reason for
an inability to walk.  See Preliminary MRI Report and Letter
from Dr. Melhem 5-6; Medical Defs.' Mot. Summ. J., Ex. B,
Various Medical Documents 7, 17, ECF No. 81-4.  All of

Plaintiff's claims are properly described as allegations of "deficient professional judgment," Chambersburg, 903 F.2d at 278, or a "disagreement about medical treatment," Spruill, 372 F.3d at 235.  Even if all of Plaintiff's allegations are true, because they are an exercise of medical judgment as to medical treatment, they are at most malpractice and not the basis of a constitutional claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Accordingly, the SCI-Green Medical Defendants are entitled to summary judgment as a matter of law as to Plaintiff's Eighth Amendment claims of cruel and unusual punishment based upon medical care.

Additionally, for the reasons set forth above in Section III(F), Medical Defendants are similarly entitled to summary judgment for Plaintiff's complaints as to the fluorescent lighting.


## 2. SCI-Graterford Medical Defendants

On July 12, 2010, Plaintiff was transferred to Pennsylvania SCI-Graterford.  Compl. ¶ 52.   Plaintiff claims he was housed in an inappropriate "psychiatric observation cell," given the incorrect laxative, and his seizure medication was discontinued.

Plaintiff does not allege deliberate indifference to a

serious medical need, see Spruill, 372 F.3d at 235-36, but rather he alleges harms that, if true, fall with the realm of medical judgments and negligence.  See Estelle, 429 U.S. at 106. Furthermore, Plaintiff's complaint shows that he was seen by Graterford's doctors and medical staff on numerous occasions, see Compl. ¶¶ 326, 328, 332, 335, 338 and 366, and sent for outside treatment, see Compl. ¶ 345.  This is not a situation where Defendant's "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care."  Spruill, 372 F.3d at 235.

Because Plaintiff's claims against the SCI-Graterford Medical Defendants do not meet the deliberate indifference standard, the Court will grant SCI-Graterford Medical Defendants summary judgment as to the Eighth Amendment claims of cruel and unusual punishment based upon medical care.

### C.   Claims under the Eighth Amendment for Denial of Food and Water.

#### 1. SCI-Greene Medical Defendants

Plaintiff avers that SCI-Greene Medical Defendants failed to provide him with food and water in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. See U.S. Const. amend. VIII.  "The [Eighth] Amendment . . .

imposes duties" on prisons to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food."  <u>Farmer</u>, 511 U.S. at 832.  Plaintiff's allegations that Medical Defendants failed to provide sufficient accommodations for him to retrieve his food are governed by the "deliberate indifference to serious medical needs" standard discussed above in Section III(C), <u>supra</u>.  The "standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious."  <u>Spruill</u>, 372 F.3d at 235-36.  When "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care," liability will exist.  <u>Id.</u> at 235.  In addition, other Circuits have held that "[a] prisoner cannot force the prison to change its rules by going on a hunger strike and blaming the prison."  <u>See Rodriguez</u>, 403 F.3d at 953; <u>Talib v. Gilley</u>, 138 F.3d 211, 216 (5th Cir. 1998).

Here, Plaintiff does not provide sufficient evidence to demonstrate a medical reason for his refusal or inability to retrieve his food the way it was provided.  <u>See</u> Preliminary MRI Report and Letter from Doctor Elias Melhem, MD, PhD 5-6; Various Medical Documents 7, 17.  Plaintiff admits that some Greene Medical Defendants "attempted to assist and accommodate [P]laintiff to ensure that he was fed regularly but prison officials . . . would intentionally intervene."  Compl. ¶ 137.

41

This admission, coupled with DOC regulations preventing medical staff from doing anything further to assist Plaintiff with retrieving food, see Pl. Dep. 671:6–675:22, requires summary judgment for Medical Defendants.  Accordingly, the Court will grant summary judgment to the SCI-Greene Medical Defendants as to the Eighth Amendment claims of cruel and unusual punishment based on failure to provide food and water.

### 2. SCI-Graterford Medical Defendants

Plaintiff also argues that SCI-Graterford Medical Defendants failed to provide him with food and water in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  U.S. Const. amend. VIII.  Food and water were provided for the Plaintiff at his door, but the Medical Defendants could not violate DOC policies to physically hand these items to Plaintiff.  Pl. Dep. 671:6–675:22.  Plaintiff admits that he understood a "higher authority" was necessary to authorize Medical Defendants to enter his cell and hand his food and water to him.  Id. 674:14-16.  As stated above, Plaintiff's evidence does not provide a medical reason for Plaintiff's refusal or inability to retrieve his food and water the way they were provided.  Pl.'s Resp. Defs.' Mots. Summ. J. 33-34; Medical Defs.' Mot. Summ. J. 8, 18.

Accordingly, SCI-Graterford Medical Defendants are

also entitled to summary judgment motion as to Plaintiff's
Eighth Amendment claims.

> **D.   Claims under the Fourteenth Amendment for Denial
> of Due Process.**

Plaintiff names Medical Defendant Dr. Jin as an
individual he "appealed to" and "pointed out the Due Process
violation[s]" to while imprisoned, and that Dr. Jin was
"involved in violating [P]laintiff's constitutional rights" by
interfering with Plaintiff receiving legal materials.  Pl.'s
Mot. Partial Summ. J. 11, 16-17.  Plaintiff fails to cite to
relevant evidence to demonstrate that Dr. Jin was responsible
for the storage or dissemination of his legal materials.
Therefore, what remains as against Dr. Jin is properly construed
to allege that Dr. Jin contributed to Plaintiff's alleged denial
of due process by misdiagnosis, and the Commonwealth Defendants
then used this diagnosis to keep Plaintiff from attending
hearings.

In this situation, due process only requires "advanced
written notice" of charges and a "written statement of the fact
finders as to the evidence relied upon."  See Wolff v. McDonell,
418 U.S. 539, 563 (1974).  Dr. Jin is not an administrator and
thus the advanced written notice issue is moot.  Even if Dr. Jin
could be construed as an administrator, his diagnosis would be a

43

"written statement of the fact finders as to the evidence relied upon" and thus satisfies any due process requirement.  See Various Medical Documents 1-9.

Accordingly, the Court will grant the summary judgment motion for Due Process claims as to Medical Defendant Jin.

### E.   Claims for Medical Malpractice.

Medical Defendants state only that Plaintiff has not yet filed a certificate of merit.  See  Medical Defs.' Mot. Summ. J. 23-28.  As explained in a separate order of the Court (ECF No. 125), Plaintiff has until January 20, 2014 to file a certificate of merit.

Accordingly, the Court will deny this portion of Medical Defendants' motion, without prejudice.

## V.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons set forth above the Court will deny Plaintiff's Motion for Partial Summary Judgment.  Due to a genuine dispute of a material fact regarding the alleged assault and the alleged retaliatory motivation, summary judgment will be denied as to Plaintiffs' Eighth Amendment claim for cruel and unusual punishment against Defendants Speelman, Lacotta, and Rambler, and for Plaintiff's retaliation claim against Speelman

and Lacotta.  In that summary judgment is granted to Commonwealth Defendants and Dr. Jin on all of the other issues that Plaintiff moved for Summary Judgment on, the Court will deny Plaintiff's motion as to the remaining claims.

## VI.  CONCLUSION

The Court will deny Plaintiff's Motion for Partial Summary Judgment.  As set forth above, the Court will grant in part and deny in part Medical Defendants' Motion for Summary Judgment as well as Commonwealth Defendants' Motions for Summary Judgment.  Medical Defendant's Motion for Summary Judgment will be denied without prejudice as to Plaintiff's medical malpractice claims.  Commonwealth Defendant's Motion for Summary Judgment will be denied as to (1) Plaintiff's excessive use of force claim against Defendants Speelman, Lacotta, and Rambler; and (2) Plaintiff's retaliation claim against Defendants Speelman and Lacotta.

Accordingly, the Court will proceed to trial on: (1) Plaintiff's claim under the Eighth Amendment for excessive use of force against Defendants, Speelman, Lacotta, and Rambler; and (2) Plaintiff's claim under the First Amendment for retaliation against Defendants Speelman and Lacotta.

An appropriate order follows.

45